OPINION OF THE COURT
Megan Tallmer, J.
Defendant is charged with predatory sexual assault and related charges. He moves to dismiss the charges against him on the grounds that he has been denied the right to a speedy trial pursuant to CPL 30.30 (1) (a) and speedy release pursuant to CPL 30.30 (2) (a).[1]
CPL 30.30 (1) (a) requires the People to be ready for the trial of a felony within six months of the commencement of a criminal action. In this case, the action commenced with the filing of two felony complaints on April 27, 2011. Thus, the People had six months or 183 days to be ready for trial, minus excludable time. CPL 30.30 (2) (a) requires defendant to be released from custody if the People are not ready for trial within 90 days of defendant’s confinement, minus excludable time.
Where a defendant moves to dismiss an indictment or for release on speedy trial grounds, the moving papers must include sworn allegations that there has been unexcused delay in excess of the statutory maximum. If the defendant meets his initial burden in establishing that the People have exceeded the six months or 90 days, the burden shifts to the People to prove that certain periods of time should be excluded. (People v Santos, 68 NY2d 859, 861 [1986].)
Based on the defendant’s motion, the People’s response and the minutes of October 13, 2011, February 2, 2012, March 15, 2012, April 26, 2012, May 14, 2012, June 21, 2012 and July 19, 2012, the court’s calculations are as follows:
April 27, 2011 - May 2, 2011
On April 27, 2011, defendant was arraigned on two felony *467 complaints[2] and the case was adjourned to May 2, 2011. It is not disputed that this period of five days is chargeable to the People.
May 2, 2011 - June 27, 2011
On May 2, 2011, the case was adjourned to June 27, 2011 for grand jury action. On May 27, 2011, the People filed the indictment and on June 20, 2011, filed and served a statement of readiness. This period of 49 days is chargeable to the People. (People v Carter, 91 NY2d 795, 798 [1998] [statement of readiness made contemporaneously with filing of indictment stops speedy trial clock].)
The indictment includes charges relating to two separate alleged incidents, occurring on April 6, 2011 and April 25, 2011, with two different complainants but similar fact patterns. In the April 6, 2011 incident, defendant allegedly followed a woman into an elevator in public housing, dragged her near the roof, sexually assaulted and robbed her. In the April 25, 2011 incident, defendant allegedly followed a woman into an elevator in public housing, dragged her near the roof and robbed her, but did not sexually assault her.
June 27, 2011 - October 13, 2011
On June 27, 2011, the case was adjourned for motion practice to October 13, 2011. The judge presiding in Part A set a motion schedule, directing defense motions to be made by August 10, 2011 and the People’s response to be filed by September 10, 2011. It is not disputed that this period is excludable for motion practice. (CPL 30.30 [4] [a].)
October 13, 2011 - November 10, 2011
On October 13, 2011, defense counsel, Robert Cantor, Esq., was not available and asked to adjourn the case to October 18, 2011. Although the motion schedule gave defendant until August 10, 2011 to file his motions, defense motions were filed on July 12, 2011. Defendant’s omnibus motion included a motion to sever. The People had not yet responded to defendant’s omnibus and severance motions. The People filed their response to defendant’s omnibus motion off calendar, on October 21, 2011. This period is excludable pursuant to CPL 30.30 (4) (f) as a time when defendant was without counsel through no fault of the court. (People v Mears, 55 AD3d 439, 440 [1st Dept 2008]; *468 People v Reed, 19 AD3d 312, 318 [1st Dept 2005]; People v Forte, 4 AD3d 123 [2004].)
This period is also excludable pursuant to CPL 30.30 (4) (a) as a reasonable period of time for motion practice pursuant to CPL 30.30 (4) (a). (See discussion, infra.)
November 10, 2011 - December 15, 2011
In his omnibus motion, defendant sought severance of the three sex offenses charged as to the April 6, 2011 incident. Counsel argued that these offenses were not properly joined under CPL 200.20 (2). Alternatively, counsel asserted that even if there was a statutory basis for joinder, defendant would be “irremediably prejudiced” by allowing the jury to hear of the alleged sexual abuse as to one of the charged incidents.[3]
In their response to defendant’s omnibus motion, the People opposed severance. On November 10, 2011, the court issued a written decision on defendant’s omnibus motion. The court granted several pretrial hearings, but denied defendant’s motion for severance, without prejudice to defendant’s right to renew before the trial court. It is not disputed that this period is excludable for motion practice pursuant to CPL 30.30 (4) (a).
December 15, 2011 - February 2, 2012
On December 15, 2011, defense counsel Cantor was relieved and Karen Smolar, Esq. from the Bronx Defenders was assigned to defendant’s case. Ms. Smolar requested an adjournment to file a motion for the court to reconsider the severance application previously denied by the court. The case was adjourned to February 2, 2012. It is not disputed that this period is excludable for motion practice pursuant to CPL 30.30 (4) (a).
February 2, 2012 - March 15, 2012
On February 2, 2012, Ms. Smolar and Ms. Yavener, the prosecutor assigned to the case, appeared before the court. Ms. Smolar reminded the court that she took over the case from former counsel and was considering renewing the motion for a severance. She asserted that the defense needed discovery in order to determine whether renewal of the severance motion was appropriate. Ms. Smolar requested specific items of discovery, including DNA evidence.
*469 With respect to DNA evidence, the People indicated that swabs were done but that the complainant needed to be re-swabbed. The following colloquy between the court and Ms. Smolar confirms that the case was adjourned for the express purpose of affording discovery to counsel to allow her to determine whether to renew the motion for severance:
“Ms. Yavener: Everything I have, I’ve turned over.
“The Court: This is taking an awful long time .... There are discovery issues I don’t have to get involved in until there is a motion to compel.
“Ms. Smolar: I haven’t filed a motion for severance because I don’t have sufficient information about this case to even be in a position to make that determination.
“The Court: You may not have any additional information.
“Ms. Smolar: Then at a point at which there is clearly no other discovery material and I have the DNA and I can make that decision, then I’ll file a motion.
“The Court: So, you’re going to put any outstanding discovery demands in writing.
“Ms. Smolar: That’s fine. . . .
“The Court: Let’s put it on for 3/15 for me to keep track of what’s going on. That’s a control date .... Time is excluded.”[4]
This period is excludable for anticipated motion practice pursuant to CPL 30.30 (4) (a). (People v Brown, 99 NY2d 488, 491-492 [2003] [time excludable as motion practice where defense counsel announced intention to file pretrial motion in unrelated matter, even though motion was never filed].) Alternatively, it is excludable for discovery sought by the defense. (See discussion, infra.)
March 15, 2012 - April 26, 2012
On March 15, 2012, defense counsel appeared and Assistant District Attorney O’Sullivan stood up for Ms. Yavener. When the court noted that the case was on for control and that Ms. Smolar was supposed to put her outstanding discovery requests in writing, Ms. Smolar explained that she was unable to do so because she had been on trial.
*470 Ms. Smolar reminded the court that she was awaiting the DNA results to determine whether to refile a severance motion.[5] The People were uncertain as to the status of any DNA swabbing, although Mr. O’Sullivan noted that the complainant was coming in to the prosecutor’s office the following week.
The court sua sponte called the parties’ attention to a recent speedy trial decision from the Appellate Division, Second Department, charging the People with untimely applications for DNA. The court had the following colloquy with counsel:
“The Court: There is a Second Department case on making your applications for DNA in a timely basis or risk having them charged to you. I’m pointing them out. I don’t have anything before me. I’m saying particularly where the complainant is in your control, it doesn’t seem that a delay for swabbing can be justified. I’m just throwing it out there.
“Why don’t we do this, counsel, you want to hold off on renewing an application for severance pending receipt of discovery?
“Ms. Smolar: I do. As I said on the last court date, I did receive some discovery before the last court appearance. I don’t know if the People are ready in the sense that they have completed the DNA work they need to do or looking to get DNA evidence in this case for trial purposes. I’m not really even clear what their posture is . . . . Its not really clear to me whether they’re attempting to get DNA evidence and they’re doing that and . . . theoretically, if I said I’m ready and they’re ready next week, whether we can try the case next week.
“The Court: Why don’t we do this, Miss Smolar, how about I . . . put this on . . . April 26th for an update. . . .
“The Court: People, we need to know what’s going on here in terms of the DNA discovery .... [I’m] not making any speedy trial marking until I hear something about the delay in getting DNA or something else.
“Mr. O’Sullivan: Just for the record, my understanding it was on for control today and defense is on trial today.
“The Court: Yes, it was on for control and the *471 defense is on trial; is that correct, Miss Smolar?
“Ms. Smolar: I am.”[6]
This period is excludable for discovery sought by the defense, pursuant to CPL 30.30 (4) (a). (See discussion, infra.)
April 26, 2012 - May 14, 2012
On April 26, 2012, Assistant District Attorney Charriot stood up for Ms. Yavener. The court again noted the recent Second Department decision charging the People with delay in obtaining DNA results. The court had the following colloquy with counsel:
“Ms. Smolar: On the last court date the People indicated that they were going to be attempting to get a swab from the complainant, and I think there was some question about whether that should be a chargeable adjournment.
“We had some discussions about that since that last court date .... I received one piece of paper from the prosecution indicating that they sent a T-shirt [to] OCME and it came back that there was no blood on the T-shirt.
“That’s the only other information I received from the People since the last court date.
“One of the reasons that I had been requesting the results [was] to find out whether or not DNA evidence was going to be used by the prosecution in this case, is that there was a prior motion filed by prior counsel regarding a severance.
“After the Court assigned me to the case I indicated that since I did not have discovery in the case, or completed versions of what the prosecution’s theories were here, that I was holding my motion in abeyance to move for a severance. . . .
“Ms. Chariott: ADA Yavener was under the impression that you were in possession of the bulk of the discovery and the DNA was the only thing you needed. . . .
“The Court: Sounds like Miss Yavener has to turn her attention to the discovery in this case including the determination whether there is any possibility of DNA having excluded any blood on the T-shirt.
“Ms. Chariott: As far as the DNA, I do know that *472 the DNA is in the process of being processed. That the swab and the lab [are] experiencing delays. They are short-handed.
“The Court: When was he swabbed?
“Ms. Smolar: It’s not my client’s swab, Judge, it’s the swab by the complainant, and it wasn’t even clear that she was swabbed on the last court date. . . .
“Ms. Chariott: [M]y understanding is that [the swabbing of complainant] has been done at this point.
“The Court: All right, again, I’m not making any speedy trial marking then.
“Ms. Smolar: When do the People think they are going to have a result? . . .
“The Court: Why are you developing a DNA profile for the complainant if there is nothing to match it to? . . .
“Ms. Chariott: The evidence is being tested right now from swabs that were taken from the hallway by Crime Scene . . . any swabbing of the complainant is in relation to that as a potential elimination swab.
“The Court: So [they are] testing swabs that were recovered in the hallway?
“Ms. Smolar: Of which incident?
“The Court: I would guess 4/25/11. . . .
“Ms. Chariott: Yes, your Honor, the April 25th, 2011 date .... Our understanding is that there is no DNA evidence related to April 6.
“The Court: How much time is [ADA Yavener] asking for? . . .
“Ms. Chariott: Your Honor, in terms of the estimate of turn-around time at the lab, its very difficult to say. As the Court knows, they are experiencing a lot of backups and delays .... She is hoping for two-weeks turn around time optimistically because the swab occurred approximately three weeks ago.
“The Court: All right . . . counsel, what do you want to do with this, put it on for a two-week date and see if they come up with the swab?
*473 “Ms. Smolar: That’s fine.”[7]
This period is excludable for discovery sought by the defense, pursuant to CPL 30.30 (4) (a). (See discussion, infra.)
May 14, 2012 - June 21, 2012
On May 14, 2012, the court indicated that the parties “had a very long discussion up at the bench about what counsel believes are outstanding discovery requests.”[8] The court then summarized these outstanding requests for the record, noting that the People were still awaiting the DNA results from reswabbing the complainant. The People explained that reswabbing was necessary because there was a problem with vouchering and advised that potential DNA evidence was related to the stairway and a necklace; no DNA was found on defendant’s tank top.
After detailing the other discovery requested by the defense, the court stated “Do we agree on 6/21 for the discovery issues and for counsel having the benefit of this final discovery [to] be in a position to see if she wanted to renew her motion to sever.”[9] Ms. Smolar requested June 28 instead[10] and the court noted that the case was on for control and that the adjournment was excludable. This period is excludable for discovery sought by the defense, pursuant to GPL 30.30 (4) (a). (See discussion, infra.)
June 21, 2012 - July 19, 2012
On June 21, 2012, Ms. Ingalls from the Bronx Defenders stood up for Ms. Smolar. Ms. Ingalls had a note from Ms. Smolar, requesting a two-week adjournment if the DNA results were not yet ready. The People advised that the DNA results were not back yet but were being expedited.[11] The court was unavailable for a two-week date and calendared the case for July 19, 2012. This period is excludable for discovery sought by the defense, pursuant to GPL 30.30 (4) (a). (See discussion, infra.)
July 19, 2012 - September 6, 2012
On July 19, 2012, the People reported that a criminalist had been assigned and the material was in the preliminary stages of DNA testing. Upon inquiry by the court as to the time frame, *474 the People indicated that DNA testing normally takes six weeks. The court advised that September 6, 2012 was its first calendar day after vacation and asked if the parties wanted to put it on that date for a DNA update. Ms. Smolar responded “That’s fine. This case has been adjourned repeatedly for merely this reason. I’m ready to proceed at this point.” The court adjourned the case for trial to September 6, 2012 and made no speedy trial markings.[12] This period is excludable for discovery sought by the defense, pursuant to CPL 30.30 (4) (a). (See discussion, infra.)
August 23, 2012 to Date
On August 23, 2012, defendant filed the instant speedy trial motion. The People responded to the motion on September 6, 2012. The court orally denied defendant’s motion on December 20, 2012 and adjourned the case to January 4, 2013, for trial. This period is excludable as motion practice, pursuant to CPL 30.30 (4) (a).
The Law
In his motion, defendant seeks to charge the People with the adjournment from October 13, 2011 to October 21, 2011, on the theory that the People took an unreasonably long time to respond to defendant’s omnibus motion. The court rejects this argument because under the original motion schedule, the People’s response was not due until September 10, 2011. Thus, the People at most would be charged with 41 days of includable time. (See People v Bonilla, 94 AD3d 633 [1st Dept 2012]; People v Delosanto, 307 AD2d 298, 299 [2d Dept 2003].)
The defense also asserts that the People should be charged with the entire period from February 2, 2012 to September 6, 2012, alleging that the delay in obtaining DNA results was not excludable as an exceptional circumstance pursuant to CPL 30.30 (4) (g).
The People oppose dismissal, taking the position that the extended delay in obtaining DNA results is excludable under the “exceptional circumstances” provision of CPL 30.30 (4) (g). Alternatively, the People contend that all time after the People filed and served their statement of readiness is excludable under CPL 30.30 (4) (a) as time requested or consented to by the defense for discovery, motion practice or for defense counsel to appear.
*475 The seminal case establishing the standard for “exceptional circumstances” under CPL 30.30 (4) (g) is People v Washington (43 NY2d 772, 774 [1977]), where the Court of Appeals held:
“Statutory examples of exceptional circumstances would entail at least probable availability of new evidence within a reasonable period of time, and a justified need for additional time to prepare the People’s case. The statutory exception, then, if it is to be given reasonable effect and it is to fulfill the legislative purpose, must be limited to instances in which the prosecution’s inability to proceed is justified by the purposes of the investigation and credible, vigorous activity in pursuing it.” (See also People v Price, 14 NY3d 61, 64 [2010] [CPL 30.30 (4) (g) exclusion applies only when People for practical reasons beyond their control cannot proceed with a legally viable prosecution].)
Prior to 2012, it was well settled that a delay for the purpose of obtaining DNA results was an exceptional circumstance, excludable under CPL 30.30 (4) (g). In People v Williams (244 AD2d 587 [2d Dept 1997]), for example, the Appellate Division held that a 41/2-month delay to obtain blood and saliva samples, perform genetic tests and obtain the written results of such testing was an exceptional circumstance within the meaning of CPL 30.30 (4) (g). (People v Robinson, 47 AD3d 847 [2d Dept 2008] [two-week delay to complete DNA tests in a rape case excludable]; People v Forte, 4 AD3d 123 [1st Dept 2004] [conducting of scientific tests did not affect People’s preexisting readiness to proceed]; People v Pinkney, 31 Misc 3d 1208[A], 2011 NY Slip Op 50530[U] [Crim Ct, Kings County 2011].)
In 2012, however, two cases decided by the Second Department called this principle into question. The first was People v Rahim (91 AD3d 970 [2d Dept 2012]). In that case, one of the adjournments in dispute was the 77-day period between January 2, 2008, when the People’s motion for a DNA test was granted and March 19, 2008, when the DNA results were announced. The Court ruled that the People’s failure to move for DNA testing for 3½ months after defendant was found to be fit demonstrated that they did not use due diligence, so as to constitute exceptional circumstances pursuant to CPL 30.30 (4) (g).[13]
*476 In People v Wearen (98 AD3d 535 [2d Dept 2012], lv denied 19 NY3d 1106 [2012]), the Second Department once again refused to find that an adjournment for DNA testing was justified as an exceptional circumstance under CPL 30.30 (4) (g). Defendant Wearen was charged with having committed a burglary on July 7, 2006. A DNA profile was developed from a blood sample recovered from the crime scene and was sent to the New York State Combined DNA Index System (CODIS). On January 22, 2007, the New York City Office of the Chief Medical Examiner (OCME) was notified that the DNA profile developed from the blood sample at the scene matched defendant’s profile.
Defendant was arraigned on the indictment on May 15, 2007. On September 9, 2008, defendant refused to consent to the People’s application for a confirmatory sample of DNA from defendant. The People then moved for a court order for a DNA sample, which was granted on September 23, 2008.
Before the DNA results were obtained, defendant moved to dismiss the indictment for violation of his statutory right to a speedy trial. In opposition to defendant’s motion, the People submitted an affirmation in which the prosecutor stated that an unidentified individual on an unidentified date informed her that no confirmatory DNA sample was necessary because defendant had an identical twin whose DNA profile was in the CODIS system. The affirmation further represented that when the trial date approached, Nicole Umback, a supervisor at OCME, advised the prosecutor that OCME did in fact need a confirmatory DNA sample from defendant.
The trial court held that the period between September 9, 2008 and September 23, 2008 was excludable under CPL 30.30 (4) (a) and that the period from September 23, 2008 to December 3, 2008 was excludable under CPL 30.30 (4) (g).[14]
The Second Department reversed the denial of defendant’s speedy trial motion, saying:
“The affirmation of the ADA was insufficient to satisfy the People’s burden of establishing that the 85 days between September 9, 2008, and December 4, 2008, should have been excluded in computing the time within which they were required to be ready for trial. Initially, no one from the OCME, including Umback, submitted an affidavit in opposi *477 tion to the defendant’s motion. The ADA asserted that an unidentified person from an unidentified agency told her on an unspecified date that the defendant did not need to provide a confirmatory DNA sample. This assertion and the remainder of the ADA’s affirmation do not suffice to explain why the People did not seek a confirmatory DNA sample from the defendant before September 9, 2008, given that the People had knowledge as early as January 2007 that a blood specimen recovered from the crime scene matched a DNA profile of the defendant. The ADA’s affirmation does not in any way explain the necessity of obtaining a confirmatory DNA sample from the defendant. Further, the People did not submit any expert evidence in support of this unsubstantiated assertion that a confirmatory DNA sample was needed. As such, the People did not demonstrate that the adjournment granted at their request on September 9, 2008, was needed to obtain evidence that was unavailable despite their exercise of due diligence, or that the continuance was justified by exceptional circumstances.” (Wearen at 538.)[15]
On October 31, 2012, the Court of Appeals denied leave to appeal in Wearen (19 NY3d 1106 [2012]).
At first blush, both Rahim and Wearen appear to be controlling in the instant proceeding, inasmuch as the People have failed to substantiate the reasons for the long delay in obtaining and processing complainant’s DNA. Here, however, the People rely not only on the exceptional circumstances exception to speedy trial, but on CPL 30.30 (4) (a), which provides for the exclusion of: “a reasonable period of delay resulting from other proceedings concerning the defendant, including but not limited to . . . demand to produce; request for a bill of particulars; pretrial motions . . . and the period during which such matters are under consideration by the court.” CPL 30.30 (4) (b) similarly provides for the exclusion of periods granted at the request of or with the consent of counsel.[16]
*478 In People v Worley (66 NY2d 523, 527 [1985]), the Court of Appeals explained the rationale for these statutory exclusions, saying:
“Inasmuch as the Legislature intended CPL 30.30 to address delays caused by the People, the time required for defendant’s pretrial motions and his requested adjournments should be excluded. Those delays have been caused by the defendant for his own benefit, and with the court’s permission, under circumstances in which both the defendant and the court have determined that the adjournment is desirable. In view of the defendant’s express waiver of the delay, the People are not required to causally trace their lack of readiness to defendant’s actions before the court is warranted in excluding the periods resulting from adjournments authorized by subdivision 4 (a) and (b).”
CPL 30.30 (4) (a) and (b) have been applied in numerous contexts to exclude adjournments requested by the defense or for the benefit of the defense, including an adjournment sought by the defense for DNA results. (See People v Williams, 278 AD2d 44 [1st Dept 2000] [excluding adjournments over four-month period necessitated by defendant’s request that People perform DNA testing]; see also People v Kopciowski, 68 NY2d 615, 617 [1986] [where adjournments are requested by defendant, periods are excusable without requiring the People to trace their lack of readiness to defendant’s actions]; People v Davis, 90 AD3d 432, 434 [1st Dept 2011] [excluding periods requested by defense after People’s statement of readiness]; People v Ortiz, 295 AD2d 134 [1st Dept 2002] [People’s readiness or lack of readiness irrelevant where adjournments at defendant’s request]; People v Celestino, 201 AD2d 91, 94-95 [1st Dept 1994] [reasonable period of time to respond to defense discovery demands excludable].)[17]
The court has reviewed the records on appeal for both Rahim and Wearen.[18] In Wearen, the trial court denied defendant’s CPL 30.30 (1) (a) motion, finding that defendant consented to an adjournment from August 8, 2008 to September 4, 2008. The *479 lower court also excluded the period from September 9, 2008 to November 17, 2008, under both the pretrial discovery and exceptional circumstances provisions of CPL 30.30 (4) (a) and (g).
On appeal, defendant argued that contrary to the People’s assertion, he did not consent to the August 8, 2008 to September 4, 2008 adjournment. Defendant further asserted that the adjournment from September 9, 2008 to December 3, 2008, when the People realized they needed a confirmatory DNA sample until the DNA results were obtained, was not a reasonable period of delay allowed by CPL 30.30 (4) (a) or the type of exceptional circumstance contemplated by CPL 30.30 (4) (g).[19] In their responding brief, the People relied solely upon the exceptional circumstances provision of CPL 30.30 (4) (g) to exclude the adjournment for obtaining DNA, citing Robinson and Williams.[20]
Given the way in which the issue was framed on appeal and the language of the opinion itself, the decision in Wearen spoke only to whether the 85-day period to secure DNA fell within the exceptional circumstance provisions of CPL 30.30 (4) (g) and concluded that it did not. The Court did not reach defendant’s alternative argument that the adjournment for DNA results was not excludable under CPL 30.30 (4) (a).
In Rahim, the People argued to the trial court that the 76-day adjournment for DNA results was excludable under CPL 30.30 (4) (g).[21] With respect to that adjournment, defendant’s brief on appeal argued solely that the delay was not justified by exceptional circumstances under CPL 30.30 (3) (b).[22] In their response, the People’s argument as to the 76-day period at issue was confined to the applicability of CPL 30.30 (4) (g).[23]
The Second Department’s decision in Rahim found that the 77-day period for obtaining DNA results was not excludable under the exceptional circumstances provision of CPL 30.30 (4) (g). Like Wearen, Rahim thus never considered whether under *480 the facts of that case, the adjournment to obtain DNA results was excludable under CPL 30.30 (4) (a).
Here, it is clear from the minutes of February 2, 2012 and March 15, 2012 that it was the defense who was seeking the DNA results to determine whether to reargue the denial of the original defense attorney’s motion to sever. Even after the court called the parties’ attention to the Wearen decision, Ms. Smolar repeated that she was holding off renewing the defense application for severance pending receipt of the DNA results.
Given this firm reiteration of defendant’s position, Ms. Smolar’s equivocal statement on March 15, 2012 that “It’s not really clear to me whether they’re attempting to get DNA evidence and . . . theoretically, if I said I’m ready and they’re ready next week, whether we can try the case next week” did not amount to a withdrawal of her pending request for discovery of the DNA results.
On April 26, 2012, Ms. Smolar once again stated that she was awaiting DNA results to determine whether to reargue defendant’s severance application. She also expressly consented to a two-week adjournment for the DNA results from reswabbing of the complainant.
The minutes of the May 14, 2012 appearance similarly reflect defendant’s outstanding discovery request for DNA results in order to determine whether to renew an application for severance and the court’s understanding that the adjournment was excludable.
On June 21, 2012, Ms. Smolar again requested an adjournment for DNA results. On July 19, 2012, Ms. Smolar asserted that she was “ready for trial,” but never expressly or impliedly withdrew her outstanding discovery requests for the DNA results.
In any event, even if the adjournments to obtain DNA results are not excludable under CPL 30.30 (4) (a) and (b), the law has long recognized that a failure to make timely discovery does not justify a speedy trial dismissal because there are other remedies for discovery violations. As the Court of Appeals observed in People v Anderson (66 NY2d 529, 537 [1985] [citation omitted]):
“But not every postreadiness default by the People not generated by exceptional circumstances or resulting from action of the defendant will permit a Trial Judge to dismiss the criminal action. There is no inherent power to dismiss and the purposes motivating enactment of CPL 30.30 do not mandate *481 postreadiness dismissal when a lesser sanction is available.” (See also People v Holden, 260 AD2d 233 [1st Dept 1999] [discovery delay did not affect People’s readiness]; People v Cajigas, 224 AD2d 370 [1st Dept 1996] [delay in turning over defendant’s grand jury testimony at most constituted discovery violation and lesser sanction than speedy trial dismissal available to defense].)
In the instant case, there are statutory remedies available to counsel for the People’s delay in obtaining DNA evidence. CPL 240.70 (1) allows the trial court to prohibit the introduction of evidence or the calling of certain witnesses for a prosecutor’s failure to comply with discovery obligations. Defense counsel is free to make an application to the trial court to preclude the People from relying upon any DNA evidence or ask for an adverse inference based upon the absence of DNA.[24]
Although the court is denying this speedy trial motion based upon facts that make it distinguishable from Wearen and Rahim, the People are on notice that in the absence of any contrary authority from the Court of Appeals or the Appellate Division, First Department, this court is bound by the Second Department’s rulings (see Mountain View Coach Lines v Storms, 102 AD2d 663, 664 [2d Dept 1984]). In most cases, it is the prosecutor and not the defense who requests adjournments for DNA results. The Bronx County District Attorney’s Office is advised that unless the defense requests the DNA results, the People will have to make the showing required by Wearen and Rahim to invoke the “exceptional circumstances” provision of CPL 30.30 (4) (g).

. This decision elaborates upon an oral decision, dated December 20, 2012, denying defendant’s motion.

. The charges in the two felony complaints, relating to two separate alleged incidents, were incorporated into a single indictment.

. Affirmation of Robert Cantor, Esq., in support of defendant’s omnibus motion at 8.

. Tr, Feb. 2, 2012 at 7-8.

. Tr, Mar. 15, 2012 at 2-3.

. Tr, Mar. 15, 2012 at 3-5.

. Tr, Apr. 26, 2012 at 2-7.

. Tr, May 14, 2012 at 2.

. Tr, May 14, 2012 at 4.

. Although the minutes indicate that the next calendar date was June 28, 2012, the case in fact was calendared for June 21, 2012.

. Tr, June 21, 2012 at 2.

. Tr, July 19, 2012 at 2-3.

. Rahim contains a “cf.” reference to Robinson and Williams (91 AD3d *476 at 971-972), but makes no attempt to distinguish these precedents on their facts.

. See brief for defendant-appellant at 12.

. Wearen contains a “cf.” reference to Robinson (98 AD3d at 538), without elaborating on any factual distinction.

. Although the People do not expressly rely upon CPL 30.30 (4) (b) in their opposition papers, all of the periods of delay included within CPL 30.30 (4) (a) would qualify as excludable time under CPL 30.30 (4) (b).

. Contrary to defendant’s position, the provisions of CPL 30.30 (4) (a) apply in both the pre-readiness and post-readiness context. (See People v Anderson, 66 NY2d 529, 537 [1985]; People v Batts, 227 AD2d 224 [1st Dept 1996].)

. Part of the delay in rendering this decision was due to obtaining and reviewing the records on appeal and briefs in Rahim and Wearen.

. Brief for defendant-appellant at 24-28.

. Brief for respondent at 13-18.

. Brief for defendant-appellant at 8.

. (Brief for defendant-appellant at 13-16.) Although defendant argued that CPL 30.30 (3) (b) applied in the post-readiness context, the “exceptional circumstances language” in CPL 30.30 (3) (b) parallels that in CPL 30.30 (4) (g) and the Second Department’s analysis is confined to the application of CPL 30.30 (4) (g).

. Respondent’s brief on appeal at 45-50.

. Neither Rahim, nor Wearen appears to have considered the possibility of a lesser sanction than dismissal under CPL 30.30.